UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PRESTON BROWN, SR. | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:15-cr-00140-JAW-1 |
| | ) | 1:16-cv-00511-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Preston Brown, Sr., moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 31.) Following a guilty plea, Petitioner was convicted of conspiracy to distribute and to possess with intent to distribute controlled and analogue substances, commonly known as bath salts. (Judgment, ECF No. 28 at 1; Government's Version of the Offense, ECF No. 7 at 1.) The Court sentenced Petitioner to a term of 36 months in prison to be followed by 3 years of supervised release. (Judgment at 2-3.)

Petitioner claims ineffective assistance of counsel at sentencing. He alleges that counsel failed to challenge the statements of a confidential informant that Petitioner received an 800-gram package of bath salts and had a firearm, and that counsel failed to request credit for 140 days of pretrial incarceration, the period of time during which Petitioner was in state custody. (Motion at 4-6.)

Following a review of Petitioner's motion and the Government's request for summary dismissal, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September 2015, Petitioner waived indictment, and the Court accepted his guilty plea to a conspiracy that took place from June 2012 to June 2014 and involved the distribution and possession with intent to distribute controlled and analogue substances, 21 U.S.C. §§ 813, 841(a)(1), 841(b)(1)(C), 846. (Minute Entry, ECF No. 12; Information.)

At Petitioner's sentencing in February 2016, in response to the Court's questions, Petitioner told the Court that he had read the entire revised presentence investigation report, that he had had sufficient time to discuss the report with counsel, and that he knew and understood everything in the report. (Sentencing Tr., ECF No. 40 at 4.)

The Court made the following sentencing guidelines calculations: the base offense level was 24, pursuant to USSG § 2D1.1, as the offense involved at least 100 kilograms, but less than 400 kilograms, of marijuana equivalent.[1] (Sentencing Tr. at 6, 27.) The Court noted that the drug quantity was 978.625 grams, which converts to 317.877 kilograms of marijuana equivalent under the sentencing guidelines. (*Id.* at 6, 31.) Counsel agreed the quantity was correct. (*Id.* at 6-7.) The Court then asked Petitioner: "And with that understanding, Mr. Brown, that the grams of Alpha-PVP and their marijuana equivalent

---

[1] The Court set the base offense level at 24, rather than the level of 26 set forth in the revised presentence investigation report, based on the parties' agreement to disregard a portion of the drug quantity that involved someone unrelated to the alleged conspiracy. (Presentence Conf. Tr., ECF No. 39 at 3-7; Sentencing Tr., ECF No. 40 at 6, 27.)

2

have been changed just as I've indicated, do you have any objections to the contents of the presentence report that we've reviewed thus far?" Petitioner answered: "No." (*Id.* at 7.)

The Court addressed whether Petitioner was to receive credit for 140 days of incarceration in state custody prior to Petitioner's federal sentencing. (Sentencing Tr. at 9-15.) Counsel represented that the time was to be credited to Petitioner's state court sentence on a charge of domestic violence assault and a charge of violation of conditions of release, and, in order to avoid a consecutive sentence, Petitioner did not seek the 140 days of credit toward his sentence on the federal charge.[2] (*Id.* at 13-15.)

The Court added two levels to the base offense level, pursuant to USSG § 2D1.1(b)(1), because Petitioner had possessed a dangerous weapon. (Sentencing Tr. at 27.) The Court also asked Petitioner whether the offense conduct set forth in various paragraphs of the revised presentence investigation report was correct. Petitioner responded "Yes, it is." (*Id.* at 5.) One of the paragraphs about which the Court inquired was paragraph 7, which read as follows:

> CI-3 informed that Brown received 800 grams of bath salts on March 21, 2014, via UPS; that Brown sold bath salts; that Brown kept scales at the house; that Brown had firearms throughout the house, including at least one stolen firearm; and that CI-3 had smoked bath salts at Brown's residence in the past. Further, Brown had surveillance cameras on the outside of his property. (Brown informed that he never received 800 grams of bath salts at his home. He also advised that though he had firearms in his home, none

---

[2] The revised presentence investigation report states that while Petitioner was on bail for the state case that was related to the federal drug charges, he was arrested and charged with domestic violence assault and a violation of conditions of release. At Petitioner's federal sentencing, the Court referred to the domestic violence assault and other charges, and the Court asked Petitioner: "Do you understand that there has been a discussion at the state level as to how to handle those charges?" (Sentencing Tr. at 7.) Petitioner answered: "Yes." (*Id.*) The Court asked Petitioner: "[D]o you have any objections to how the presentence report has described your criminal history, including the pending charges and other arrests that you've had?" (*Id.* at 8.) Petitioner answered: "No, I don't." (*Id.*)

3

> were stolen, none were loaded, none were brandished or used in connection with the criminal conspiracy, and they were in a locked unit except for when he cleaned or sold them. He does not object to the enhancement in paragraph 19.)

(Revised Presentence Investigation Report, ¶ 7 (emphasis omitted).) Paragraph 19 of the report states in relevant part: "The defendant was known to possess dangerous weapons (including firearms). Specifically, CI-6 observed the defendant store a firearm with his bath salts. Therefore, 2 levels are added. USSG §2D1.1(b)(1)." Petitioner thus admitted that he "had firearms throughout the house," and Petitioner confirmed that he did not object to the firearms enhancement.

The Court subtracted three levels, pursuant to USSG § 3E1.1, because Petitioner accepted responsibility for the crime. (Sentencing Tr. at 27.) The total offense level was 23. (*Id.*) The Court determined Petitioner's criminal history category was level I, which, when combined with a total offense level of 23, yielded a sentencing guidelines range of 46 to 57 months. (*Id.*)

The Court next considered the sentencing factors set forth in 18 U.S.C. § 3553(a), and focused on the history and characteristics of Petitioner and the nature and circumstances of the offense. (*Id.* at 28.) After discussing the relevant factors, the Court sentenced Petitioner to a prison term of 36 months, i.e., below the advisory sentencing guidelines range, followed by a term of three years of supervised release. (*Id.* at 38.) Petitioner's plea agreement contained an appeal waiver provision, and Petitioner did not appeal from the conviction or the sentence. (Plea Agreement, ECF No. 8 at 2; Docket Sheet.)

Petitioner asserts that he placed his section 2255 motion in the prison mailing system on September 29, 2016; the motion was timely filed on October 3, 2016.³ (Motion at 1, 12.) The Government acknowledges that the motion was filed timely. (Response, ECF No. 41 at 7 n.3.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

A section 2255 petitioner must establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). "[A] habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are 'vague, conclusory, or palpably incredible.'" *David,* 134 F.3d at 478 (quoting *Machibroda v. United States,* 368 U.S. 487, 495 (1962)). The First Circuit has held that a Petitioner who "fails to reasonably substantiate his ineffective assistance of

---

³ *See* 28 U.S.C. 2255(f) (providing in pertinent part that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final.")

5

counsel claim with any material issues of fact . . . has not 'overcome the presumption of regularity which the record . . . imports . . . .'" *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) (quoting *Walker v. Johnston*, 312 U.S. 275, 286 (1941)). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance of counsel are evaluated; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697.

### B. Claims and Analysis

#### 1. Claim that counsel failed to challenge the drug quantity

Petitioner alleges that counsel failed to challenge the statement in paragraph 7 of the revised presentence investigation report that Petitioner received 800 grams of bath salts. (Motion at 4.) Petitioner contends that he asked counsel "to check with UPS because their records would clearly show that no such delivery ever occurred. Counsel told Petitioner

6

that nothing could be done about that (false) claim because Probation would not take it out of the PSR." (Attachment to Motion, ECF No. 31-1 at 3.)

Contrary to Petitioner's argument, his challenge to the amount was included in the revised presentence report. Specifically, the revised presentence investigation report contained the following parenthetical entry: "Brown informed that he never received 800 grams of bath salts at his home." Petitioner reasserted the denial at sentencing when, in response to the Court's question, Petitioner represented that the paragraph containing the denial was true. (Sentencing Tr. at 5.) The Court noted that it would consider the information Petitioner added parenthetically to the revised presentence investigation report. (*Id.*)

Significantly, when the Court asked Petitioner specifically whether he objected to the drug quantity, Petitioner told the Court he did not object. (Sentencing Tr. at 6-7.) Given that Petitioner did not object to the drug quantity when asked directly by the Court after the Court stated the drug count calculation, counsel's decision not to challenge the drug quantity further was reasonable. *See Strickland*, 466 U.S. at 699 (concluding that "there can be little question, even without application of the presumption of adequate performance, that trial counsel's defense, though unsuccessful, was the result of reasonable professional judgment").

Petitioner has thus failed to demonstrate either that counsel's performance was substandard or that Petitioner was prejudiced.

### 2. Claim that counsel failed to challenge the allegation that Petitioner had a dangerous weapon

Petitioner alleges that he told counsel the firearm at issue was only a pellet pistol in a locked box. (Attachment to Motion at 3.) Petitioner asserts that counsel advised him not to challenge the special offense characteristic, because Petitioner risked a two-level enhancement for maintaining a drug involved premises.[4] (*Id.* at 4.) Petitioner argues counsel's advice was incorrect and unreasonable. (*Id.*) He alleges he was prejudiced because his sentence was longer than it should have been, and because he has been denied early release eligibility. (*Id.*)

Petitioner's claim fails because at sentencing, Petitioner acknowledged to the Court that the paragraph of the revised presentence investigation report that stated that Petitioner "had firearms throughout the house" was correct,[5] and he did not object to the firearms enhancement under USSG § 2D1.1(b)(1). (Sentencing Tr. at 5.) Furthermore, assuming Petitioner could prove that he told counsel he had only a pellet gun, he cannot demonstrate

---

[4] Petitioner may have intended to refer to 18 U.S.C. § 856(a)(1), which provides that it is unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."

[5] Paragraph 7 of the revised presentence report states in pertinent part: "[Defendant] had firearms throughout the house, including at least one stolen firearm." At sentencing, the Court asked: "Looking at the offense conduct 6 – paragraph 6, 7, 8, 9, 10, and 11 on the second page, is that all correct, as well?" (Sentencing Tr. at 5.) Defendant replied, "Yes, it is." (*Id.*)

prejudice, because such a gun qualifies as a dangerous weapon. *See* USSG § 1B1.1, comment (n. 1(G)).[6]

Counsel's performance, therefore, was not deficient, and Petitioner was not prejudiced by counsel's advice.

### 3. Claim that counsel failed to request credit for 140 days of incarceration

Petitioner alleges that counsel's performance was substandard because counsel failed to request credit for the 140 days Petitioner was incarcerated prior to his federal sentencing. (Motion at 6.)

Petitioner represented to the Court that his bail had been revoked on the state drug trafficking charge, and that he started the 140-day incarceration period at issue on May 3, 2015. (Sentencing Tr. at 11-12.) Counsel advised the Court that Petitioner went into federal custody on September 22, 2015. (*Id.* at 12-13.) Counsel also informed the Court that if the Court allowed the 140-day credit on the federal sentence, the State would request consecutive sentences on the state charges. (*Id.* at 13-14.) Counsel reported that the State's offer on the drug trafficking charge was to recommend a one-year prison term, with all but 140 days suspended, and a concurrent 140 days on the two misdemeanor charges of violation of conditions of release and domestic violence assault, with credit for time served.[7] (*Id.*) The Court then told counsel: "Why don't you talk to your client. He's got

---

[6] USSG § 1B1.1, comment (n. 1(G)) provides in pertinent part: "A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm."

[7] The Government represents that at sentencing, the Court admitted in evidence a formal plea offer sheet that showed recommended dispositions of (1) twelve months of incarceration, with 140 days of credit for time served, for the drug trafficking offense, to be served concurrently with the federal sentence;

9

– he's obviously got some things he wants to talk to you about." (*Id.* at 14.) The transcript reflects that counsel spoke with Petitioner. (*Id.*)

Following counsel's consultation with Petitioner, through further discussion with the Court, the parties acknowledged that Petitioner would not be entitled to credit for the 140 days served on the domestic assault and violation of conditions of release convictions because that conduct was not related to the federal charge. (*Id.* at 15.)

The record thus reveals that at sentencing the Court and the parties discussed in some detail whether Petitioner was entitled to credit for the 140 days he was held in state custody before he was transferred to federal custody. The ultimate conclusion that Petitioner was not entitled to a credit for the 140 days was sound. In addition, because the State's plea offer on the state charges contemplated that Petitioner would not receive credit against the federal sentence for the time he was in state custody, counsel effectively could not argue for a credit on the federal sentence given that Petitioner intended to accept the State's plea offer. Under the circumstances, Petitioner has not demonstrated counsel's substandard performance, or that he was prejudiced by counsel's conduct.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend

---

(2) concurrent 140-day terms, with credit for time served, on the offenses of domestic violence assault and violation of conditions of release; and (3) dismissal of aggravated assault and robbery charges. (Response, ECF No. 41 at 6-7.)

that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 11th day of May, 2017.